Good afternoon, everyone. The panel has before it four cases. The fourth case is being submitted today on the Briefs Without Oral Argument. That's Appeal 2008-3340, Garrett v. Merit System Protection Board. The first argued case will be In Re Bose Corporation, Appeal 1448 from 2008. Mr. Huyken, good afternoon to you. Welcome back to the Court. You have seven minutes for your principal argument. When the yellow lake goes on, you're beginning to consume your two minutes of rebuttal. Ms. Hightower has intervening six minutes. Thank you, Your Honor. Is that clear enough? Your Honor, may it please the Court, Allen's trademark digest for December 2008 on page 8 included an article on this case. And the last paragraph included these words. The Board's ruling on the fraud issue seems particularly precarious. There may have been no case law that supported Bose's position on the use issue, but there did not seem to be any case law directly to the contrary. So one must ask whether the Board went a bit overboard in finding Bose's position so unreasonable as to be fraudulent. Well, you know, the author is not a party, and the article is not a brief, so I think we should concentrate on your brief. And I have a preliminary question whether you've preserved the argument that the standard applied by the Board is an improper standard under the law. I mean, I look all through the blue brief and I don't find it at all. And I find one brief mentioned in a single page in the gray reply brief at page 9 where you focus on the standard. But ordinarily we don't let people raise new issues just in the reply brief. It has to be in the initial brief, the blue brief. And from reading the two Board opinions, it's hard to see that the issue was raised or at least recognized by the Board. So I'm wondering if we really have a legal issue keyed to the words, or should have known. Why isn't it waived? Well, why don't we go to the use position which we had on page 3 of our reply brief where we summarized it. Because if in fact what Bose was doing was proper in its declaration of use, that should settle the situation. Well, are you agreeing that it wasn't squarely raised and therefore we can and perhaps should deem it waived? No, Your Honor. Well then, what's your response to the apparent ground of waiver? Where did you raise it? What line and what page of the blue brief does raise it? I think in the questions, issues presented, whether the Board erred in determining that Bose intended to deceive the U.S. Patent and Trademark Office and committed fraud when its General Counsel declared that the mark was in use in all the goods. How does that highlight any portion of the standard that the Board relied on? That just could be read as they misapplied the correct standard on this evidence. But at page 9 of the gray brief, you specifically argued that they actually used the wrong standard, that the standard they used was an improper, unlawful standard. So I'm trying to figure out whether the gray brief is too late. And one response would be no. Here it is. It's also in the blue brief. Look at page 8 or look at page 9 or whatever it would be. But I don't see it in the question presented as you just read it. Well, we said by changing the intent requirement from a subjective intent to deceive to an objective knows-or-should-know falsity standard, the Board has established a strict liability. What are you reading from? I'm reading from page 9 of the reply brief. Yes, I agree it's raised at page 9 of the reply brief. And as I commented, ordinarily that's too late. So then the question is, well, is it preserved well enough in the blue brief? And I'm trying to get some help from you of if so, where in the blue brief is the argument fairly raised? I would like to suggest that the whole point of it was the issue of fraud. And that it's got to be involved in there, whether they apply the proper standard. I don't want to use up all your time. I just wanted to raise the point. But we've got to get to the merits because the time is fleeting. Right. Also, when we rely on the Starr Scientific case, I think we're expressly supporting the position that necessarily the standard of proof is involved. Again, Starr Scientific cited in the reply brief, but not in the blue brief. No, it is in the blue brief, Your Honor. The Starr Scientific case came out, I think, was still in form where it was just the typewritten brief, basically. So we did cite Starr. And we relied heavily on Starr. And we think that's the proper standard to use in connection with trademark cases, too, that this Court ought to follow. So... How would you have us deal with Torres? Ma'am? How would you have us deal with Torres? Torres is a case where it was shown that one could conclude that there was clear and convincing evidence of intent to defraud from the circumstantial evidence involved. Where it involved the label, where this person who signed and said we were using the label knew that he was not using the label. Where also it was only used on one of the wines, and the person who signed it knew it wasn't on the wine. But the point is that Torres talks about a should-have-known standard. Yes. The question is, do we have to overrule Torres to change the standard? I'm not... No, I don't think so. I think that you could... Why not? Because there was evidence of intent to deceive that one could infer from the circumstances around it. We don't confine cases to the particular facts that are being litigated there. We go with the rule of law that was used to decide the case. And the rule of law that was used to decide Torres seemed to be a should-have-known standard, right? Well, in two other of the trademark cases, too, the standard is clear and convincing evidence. In fact, even if you look at this case here, if you want to find a basis for ruling on the issue, the Board itself said that you had to prove it by clear and convincing evidence that there could be no doubt about the fraudulent intent having been proved. So that's another basis for saying that you can consider this issue here, and we submit that you should consider that issue. Just going briefly on to use at this time, we rely on the language of the statute. Section 1127 expressly talks about transportation and commerce, and clearly the transportation of these products back and forth between the consumer and Bose was a transportation in commerce. And the legislative history is mentioned in the director's brief, but the legislative history was concerned at that time with primarily the issue of token use. And in connection with repairing goods, that is not a token use, because as soon as a manufacturer comes out with a product, the manufacturer sets up an organization for repairing. And what was continuing here was continued repair. And the policy of the law ought to be that we want to encourage manufacturers to support their products, even after they stop making them, by continuing to repair them, and allow them to maintain their trademark rights and recognize it as being a use, especially when it's directly in conformance to the words of the statute. Now, one portion of the legislative history is on page 27 of the director's brief, and they say the committee intends that the revised definition of use in commerce be interpreted to mean commercial use, which is typical in a particular industry, and this is commercial use in a particular industry. Your time has expired. We'll restore your two minutes of reserved rebuttal, and we'll add two minutes to the appellee's time, and we'll hear now from Ms. Hightower. Thank you, Your Honor. May it please the Court. I'm Susan Hightower from the law firm Perky Barber in Austin, Texas, appearing on behalf of the Amicus American Intellectual Property Law Association. If I may, I'd like to start with the waiver question that you posed to Mr. Hyken first. AAPLA submits that this Court may consider the legal standard question in its discretion for two separate reasons. First is that materiality is, and I think the director argued the materiality and injury were the specific parts of the legal standard not raised below. First is that materiality was part of the three-factor test applied by the Board. It was also raised by the director. But they haven't raised materiality on appeal, right? Your Honor, the director briefed the materiality standard beginning of page 19. Oh, the appellant. Yes, sir. The appellant did not raise it. Sorry? The appellant did not raise the materiality issue. Not on my read of the briefs, but the Amicus did, and under the Supreme Court. Wait a minute. The issues aren't brought to the Court by the Amicus. The issues have to be brought to the Court by the parties, and then the Amicus can help inform the Court. But an issue can't get here just because an Amicus would like to have it here. Well, under the Supreme Court case of Teague v. Lane, the Court, in its discretion, may consider an issue that's raised by an Amicus. Second, even if the Court finds that these issues were waived below, this is a purely legal question that the Court, again, has discretion to consider. It's an issue of great public concern and importance to this case and beyond. So under the cases of Singleton v. Wolfe, another Supreme Court case, and Broadcast Innovation v. Charter Communications, 420 Fed 3rd, 1360, a Federal Circuit case, AFPLA asked the Court to consider this case, this issue, in its discretion. Okay, Counsel, what are we doing with Torres? What happens? Torres, the newer set of mail language obviously is in Torres, but it's not necessary to the determination of that opinion. That case involved at least two separate admitted falsehoods. First is that the registrant knew, at page 49 of Torres, it states, the registrant knew that his mark was not in use on vermouth and champagne, although he swore that it was. Second, the registrant, and this appears to be an individual he's referred to throughout as Mr. Torres, so he knew, it states at page 47, I believe, that he had changed his mark five years previously. He omitted the word last, made the word Torres much bigger, put it over the three towers design, and knew that he was no longer using the mark as he did. So do you think it's dicta? How do you think we treat Torres? Wouldn't that be kind of tough for us to suggest it's dicta just because the Court didn't have to go quite as far as it clearly did in articulating the very standard that decided the case? Conceivably. It's not necessary. And on the facts of that case, I think that Torres was clearly correctly decided. But that sounds like an effort to confine the case to its facts, which is not what we're supposed to do. We're supposed to consider the legal rule that was used to decide the case as precedent and as a panel of this Court, aren't we? Yes, Your Honor. But the problem with what's happened with the Torres language is that it's being used in situations that are significantly different than don't involve admitted knowing falsehoods. I don't understand how that responds to Judge Dyke's point. We're bound by the holding of Torres, and you've pointed out a factual difference, but we're still bound by the holding of Torres. So unless you can define the holding of Torres more narrowly than we might have, in response to Judge Moore's question, it seems to me you're still stuck in the corner. Well, on my read of the Torres case, the Court does use the should-have-known language, but it also uses knew. So given the knowing falsehoods, the should-have-known language isn't essential. Well, I thought your whole point was that there had to be deceptive intent, and I don't see how Torres is consistent with that. Because knowing isn't precisely the same as intending to deceive. That is something that has come up in the various cases, that when we discuss a knowing falsehood, is that the same thing as an intent to deceive? It might be, it seems to me, or it might not be. You seem to be making a total equation of the two phrases. Well, a knowing falsehood would seem to be a factor to consider in determining whether fraudulent intent is proven. It could be circumstantial evidence, it could be indirect evidence. But the subsequent cases following Torres, the Metro Traffic Control, and the Kitchler v. Dave oil cases, don't use the new or should-have-known language. They say knowingly false statement. The deceptive intent AIPLA would submit cannot be presumed, but it has to be proven by clear and convincing evidence. Well, I don't think there's any argument that it can be presumed. The argument here is, the finding, or the argument of the solicitor is, it was adequately proven by proper evidence. Not that it doesn't have to be proven, but it was proven, he says. So what's your response to that? Well, in the Bose case, as opposed to the Torres case, in this case, what the board did was say, apply the new or should-have-known standard to say that the registrant should have known that his claim of use of its mark was false. No, they said he did know. They said he admitted. They said that Mr. Sullivan admitted that he knew they were no longer manufacturing the audio tape machinery. That's not should-have-known, that's actually new. But they cited the standard and then stated that, based on an unreasonable conclusion of law, that constituted scient or sufficient to find fraud. All right, thank you. Let's hear from the government. Mr. Chen. Thank you, Your Honor. Good afternoon to you, and welcome back to the Court, where we hear from you often and happily. It's good to be back, Your Honor. Thank you. May it please the Court. Under this Court's controlling precedent in Torres and Duffeymont, which each stress the high duty placed on trademark owners to accurately fulfill their statutory requirements. What about older cases pre-Torres that just talk about knowing? They never say should-have-known. They say known. So what do we do with those? I mean, if we're going back to the earliest cases, the one binding on the Court, not, say, Metro, which they argue should be given a different interpretation than Torres, if this Court can't change the law, why is it Torres we should follow and not the earlier and CCPA cases that all said knowing? Well, I think Torres explains what knowing means, or can mean, when it says knowing can mean either new or should-have-known. It explains that at page 49 of Torres. How can that be right? I mean, unless you interpret should-have-known to mean operating with reckless disregard for what the truth might be, the only other interpretation I can think of for should-have-known is to invoke a negligence-type standard. Well, it's careless, and that seems to be a big problem, because fraud is a totally different legal regime from tort negligence. The should-have-known language, I agree, can mean different things. Do you agree that it has to be, at best for you, that it has to be equated with recklessness, the should-have-known? I think equating it with recklessness is appropriate and correct, yes. And we don't disagree. We agree with AIPLA that reckless disregard of the truth is tantamount to intent. And that's, in fact, what this Court has said with respect to Walker process fraud, and that comes back to the common law. Well, what do we have here? Do we have reckless disregard here? We absolutely have a reckless disregard of the statutory requirements. Well, how could that be? I mean, really. This application, this renewal application, was filed in 2000, right? And the statute had been significantly amended in 1998. I've looked at the legislative history. I've looked at the statutory language. It's hard to imagine someone in the position of Bose here reading this and getting any clear message from it with respect to whether repair qualified as a use in commerce. And there was no authority at that point. The Ninth Circuit case that you rely on was two years later. If somebody researched every case on the planet, where would they find the answer in 2000 as to whether repair was a use in commerce? Okay. Let me, okay, I'll respond first to the use in commerce theory. First of all, there's many different reasons why this theory is unreasonable and just cannot hold water. But is the first step in your answer, was there any case in 2000 that had adopted the PTO's interpretation of use in commerce? There was no specific case on this theory, I agree. But that's because, in our view, this theory is so unreasonable that no one ever tried to actually litigate it. Unreasonable because of the statutory language and legislative history? Yes, in light of the statutory language. Unreasonable sounds like negligence law too, just like, or should have known. It seems to me that PTO's crossed a very, very fundamental line in using negligence phraseology, even though some of it's quoted from cases, in a regime that all will have to agree involves civil fraud. Your Honor, the TTAB's test comes directly from Torres and Duffey-Mott, which explain the theme of those cases in Duffey-Mott, Torres, and you can also consider Bart Schwartz, and even in Mother, in Ray Mother's, Mother Tucker's. The importance of the affidavit that's statutorily mandated cannot be, cannot be stressed enough. When Congress made it very clear, when you come to the government, and you want to get an intellectual property right, you have to come forward and comply with certain statutory requirements. And one of them is to accurately identify your goods and services you're using the mark on. And, on top of that, they require you to... Well, why was it reckless here? Why was it reckless to think that under the statute and legislative history that repair could be a use in commerce? Why was that reckless? Well, it's reckless because, first of all, it's a two-part answer, Your Honor. First of all, the cases make clear that there's a high, high duty on trademark owners to accurately fill out their affidavits. That doesn't help us. We're dealing with specific holdings and specific cases, and an editorial comment about the importance of accuracy doesn't help us. Of course it's very important to have accurate applications and supporting affidavits. Of course we want to deter bad conduct, but that doesn't answer the question of what does the government have to prove in order to cancel somebody's registration. And that's going to depend on the facts and circumstances of every case. And on what test gets applied. And we're trying to get some help from you on what's the proper understanding of the applicable test. And the applicable test is new or should have known. That's this court's law. Well, I thought you just agreed with Judge Dyke that it's not really an ordinary understanding, new or should have known. It's new or had reckless disregard for the facts. Because in these particular instances, the trademark owner, of course, is in a position to know their own affairs. All they need to do is open up a catalog. It's not hard to figure out which goods to search. He knew they weren't making it anymore. That's conceded. But he thought that nevertheless there was a use in commerce because of the traffic back and forth to repair the defective equipment. Right. And then the question comes down to is that a reasonable good thing to do? Well, that's what you say the question is. I'm not convinced that's a fair question because that's back into tort law and not fraud law. Well, it goes into what happened in Torres and Duffiemont, where in both of those cases, each trademark owner tried to say, I made a mistake, I misunderstood. For example, in Torres, the trademark owner alleged that he misunderstood that the new mark that he was using was actually so different from the original mark. You agree that the standard is recklessness, right? Actually knew or was active in reckless disregard. You agree that's the standard, right? I agree that should have known encompasses reckless disregard. Does it go further than that? It's hard to say because it hasn't really been developed yet in the case law. But we do know that when you blow off your statutory requirement for filing your affidavit correctly, then that's tantamount to an intent. You're assuming the result. You're assuming that there was a reckless disregard here in the face of an explanation that in view of the case law and the statutory law at the time, it doesn't seem crazy, doesn't seem to have no foundation. You label it unreasonable. The other side would label it reasonable. How does that help us? And then maybe this case turns on understanding what the term use in commerce means as it's used in Section 1127. And if you look at the statutory term, it says a mark shall be deemed in use in commerce on goods when A, you place that mark on the good, and B, when you take that good and sell it or transport it in commerce. What happened here was back in the mid-90s, Bose was in fact placing the mark on the goods and then selling it or transporting it in commerce. But by year 2000, when this particular person signed this affidavit, they had long stopped affixing any mark to any tape player. And there was a temporal aspect to understanding 1127.1A and B. Even if we agree with you that there is a temporal aspect, the question isn't whether that is the right interpretation or not. The statute certainly doesn't call for that. And the question is, was it unreasonable for them to have that belief at the time? So even if we were to agree with you, you have to agree the statute, you may tell us, should be construed in a way that has a temporal component, but is the statute so absolutely clear on its face that it would be unreasonable for anyone to even think to the contrary? Yes, because use in commerce requires you to look at what you are doing today, present term. What are you doing right now? Let me ask you a hypothetical. If I buy a pencil from you, at the moment you are selling me the pencil, that's a use in commerce when the pencil has a trademark on it, right? Yes. So the sale in that example just covers, you hand me the pencil, it has a trademark on it, I hand you a dollar, let's say. But in this case, the sale wasn't so simple, it was a little more complicated. Bose sold the equipment to a buyer, and along with that came a warranty that provided a right to free repair if a defect was discovered during the period of the warranty. And in at least some of these cases, that's what happened. The consumer sent it back to Bose, Bose repaired it for free. Why shouldn't we consider the sale as an ongoing thing that involves not only the object, but a kind of a service agreement for the same purchase product? That service might be good enough for a service mark, but it's not good enough to say that that was a trade in the good. To be a trademark on a good, you have to use the mark in the trade of the good. You have to do the pencil sale. So how long is the temporal constraint on the statute? Is it a day? Is it 30 days? Is it 60 days? You see where I'm going, right? Because I make a good, I affix a label, I stick it in my warehouse, and you know what? Nobody's buying right now, but six years down the road, I've got a market for my product. And that will depend on, as it says in the statute, the ordinary course of trade. What in that industry is the normal course of trade? So somebody, if I put my own mark on this, and then I put it in the garage, and six years later I sell it, even though most people in this industry might be able to sell theirs right away, I'm now suddenly not going to be using my mark in commerce in this manner, because I had it in my garage for six years before I sold it. It's going to depend on the facts. That could very well be an abandonment. You have to, there has to be this temporal connection. You are continually trying to commercialize that product. That's what 1127 is telling us. That's why there's this temporal aspect between A and B. It also says sold or transported in commerce. Well, if it's going to all turn on the ordinary course of business, and all these other factors you're saying, such that you can't give me a clear answer on how long this magical temporal limitation is, how in the world is it unreasonable for them to think maybe they fall within whatever abstract parameters we can't define? Because they discontinued selling this product and making this product three plus years from the date they signed this affidavit. They had gotten completely out of the business. There is no intention to do any more tradeflares. They don't allege that selling it is what entitles them to coverage under this statute, so it's sort of irrelevant when they stop selling it, since they're claiming the repair portion of it is what allows them. Yes, but the point is transported in commerce. That necessarily talks about not only this temporal aspect, but it also talks about an actual trade in the good. Commerce, the ordinary dictionary definition of that term is you actually have to do some kind of exchange, and that's the same thing as trade. But what you argue here, as I've read your brief, you say we should give Chevron deference to the interpretation of the PTO. Do you know what the requirement for applying Chevron is? The first requirement is that the statute is ambiguous, right? That's right. So you must be assuming that the statute is ambiguous when you're arguing for Chevron deference. If the statute is ambiguous and you haven't yet interpreted it, which you hadn't done in the year 2000, how can it be that somebody reading an ambiguous statute can be reckless in interpreting it one way rather than the other? And I'm happy to explain that. First of all, the Chevron deference portion of our brief was in the standard review section, and we are not relying on Chevron deference in arriving at the fraud finding here. It was simply to explain and identify what we saw as what was in this Court's case law. But Chevron doesn't apply unless the statute is ambiguous, right? That's right, and we're not saying that it's ambiguous here. Then why are we arguing for Chevron deference? We weren't arguing for it. We were simply complying with our obligation to let this Court know about this particular line of case law. When we intervened in this case, we notified the Department of Justice of our interest to intervene and represent the TTAB here, and the DOJ asked us to insert this in our standard review section and reminded us that there was this body of case law. Because they thought the statute was ambiguous? No, because just understanding when it comes to statutory interpretation, this is a part of statutory construction law, but nevertheless... Not if the statute's clear it's not. That's right, and here we aren't arguing. If you look at our argument section, we aren't arguing that this statute is ambiguous. In fact, even if it was ambiguous, our position would be that this person's interpretation of an incidental transport of the goods after a repair service  Hold on. Did you say that you weren't arguing for Chevron deference in this case? Because I'm looking at page 15 of your brief, and it seems like you might be. I mean, it's not just the two pages that preceded it, the layout, the back and forth, but where you say, Accordingly, the TTAB's reasonable interpretation of use in commerce is entitled to deference. That's not a quote from anything. That's your argument to us. Well, to one sense, it's important to us that use in commerce is interpreted correctly. But you can't argue to us that you're entitled to deference on it. I think Judge Steik is right, under Chevron, unless you're saying it's ambiguous. You might not have actually said it's ambiguous, but by telling us that you think the Chevron framework applies and that's why you should be entitled to deference on the point isn't... No. No? Tell me. To the extent that's what you're reading it as, that's not why we're here. We're not here claiming that this is an ambiguous statute and we deserve deference as to our limitations. So then, to the extent your brief says that, you're abandoning that now. We are simply pointing out to this Court what we understood, that there was this other line of case law that existed... But you don't seek to rely on that other line of case law. It's just academic to point out to us that it exists. Right. So you're not relying on it. Let me ask you just a very simple question. In order to get a trademark registration cancelled, is it required that there be proof of deceptive intent? In order to knock out a trademark registration for fraud, yes, you have to satisfy the intent element. Deceptive intent. The intent to deceive. Okay, well that's the same as deceptive intent. Right, but at the same time... Where in either opinion of the Board do they make a finding of fact that Mr. Sullivan, when he said what he said, intended to deceive the Board? The TTAB said it when they found that this particular person... No, where? What page? What line constitutes in your mind the finding of fact that Sullivan not only told something that wasn't accurate, but did so with intent to deceive? I don't have a particular site right now... I looked and looked and looked through both opinions again and again and I couldn't find anything even close to a finding of fact of intent to deceive. I find places where they say he knew the sales had ended, but I don't find anything that says he intended to deceive in those words or any other words the patent office when he signed the affidavit. It's necessarily part of the TTAB's decision when it found that this person knew the things that he knew already about the line having been discontinued and ultimately determining that this particular legal theory was unreasonable. That follows the line of cases that the TTA has been following about how you have to meet a very high duty when somebody files an affidavit to get a trademark registration. And then secondly, if they don't meet that duty, we have to look and determine whether there is some kind of reason for there have been an honest mistake in not fulfilling that statutory requirement. That's what they say this case is. This is an honest mistake of law by Mr. Sullivan and that's why he signed the affidavit. He thought it was true because of his understanding of the law. And the TTAB looked at that carefully and said, no, it's just not going to come close. Doesn't the board have to say, in view of all the evidence, we find that he intended to deceive. He was trying to get a mark renewed that he knew wasn't renewable. And in this particular case... Don't they have to say that? Don't they have to find that? I don't know if they have to say the magic words, but if they do all of the analysis that leads up to that finding, then that is sufficient for this court to... I don't see any analysis of his intent. All they say is his view of the law wasn't reasonable. I don't see how you get from there to saying, therefore, they must have also concluded, although they didn't say, that he intended to deceive. Well, that meant that he should have known that this kind of activity is not... is a false representation of saying that this is use in commerce. Well, let me ask you about that. Judge Moore questioned you about your theory that there's some sort of temporal limit, that at some point after the sale, it's no longer in commerce. But in your brief, as I recall, the emphasis was not on a temporal limit, it was on ownership. You talked about the passage of title, and as soon as the recorder was sold to the customer, the commerce was over, in your view, and anything that happened after that couldn't possibly be any longer in commerce. Which is your view? Temporal or title? There's multiple views, Your Honor. Yes, we talked in our brief... Yes, what? As to why this theory fails. One of them is this temporal aspect. You can't rely on some affixation of the mark five, ten years before, and then selling the good... My question is, is passage of title decisive or not to cut off it being still in commerce, in the meaning of the statute? Yes, because when you look at... How about if I buy a car from Judge Dyke, and I send him $1,000, that's the agreed price, he receives my check, he cashes the check. So I assume at that point that title passes, but the car is still in his garage, I'm out of the country, I'm going to pick it up when I get back. Title is passed, but isn't the sale still in commerce? I don't have the goods yet. That's true, but they belong to you. And when you look at 1127, the understanding for the word trademark, it requires, among other things, that you, the trademark owner, are using it to identify and distinguish your goods from other competing goods. But when the statute and the legislative history uses the word his or hers, do they mean they presently own it, or do they mean they were the ones who made it, as opposed to other people who make similar products? It means that it belongs to the trademark owner. And I know there's a... What's your basis of saying that's the right and only interpretation of the statutory language? The trademark, to be the trademark owner, you have to be using that mark, and you have to be using that mark on your own goods to distinguish it from your competitors' goods. That's what 1127 tells us. And I understand that the AIPLA has made an argument about licensing, or licensees and other people can make it for the trademark owner. We don't disagree with that. But for purposes of the context of this case, where it's between Bose and the purchaser, after the sale has taken place, those goods don't belong to Bose anymore. They are now the purchaser's goods. So if anything, they are transporting the purchaser's goods, and they're not doing it in commerce. But the trademark still has significance. If I'm Bose and you buy the radio and it breaks and you send it back to me, I'm not going to repair it unless it has my trademark on it. You send me a GE radio, I'm not going to repair it. The warranty only covers a Bose radio that I made and sold to you. So the mark is still being used to distinguish who is the maker of the goods. But who is using the mark in that context? It's not the trademark owner. It's the purchaser that's using the mark in that context. No, it's Bose. Bose gets the radio back and the first thing it looks at is is this one of our radios that we made or is it somebody else's radio? How do we know? Well, we see our trademark right on the box. But for the actual repair service to take place, who is using the mark to figure out where to go to have it serviced? I'm suggesting both. The consumer is using the mark. He knows to send it to Bose in Boston. And I, Bose in Boston, also look at the mark to make sure it's my radio. I made it. I'm responsible for the defects. Counselor, are you suggesting that there's a distinction between, say for example, my Bose radio breaks and I send it to Ray's service shop and you fix it. Well, clearly no one's going to allege use and commerce, right? You're a company. You're servicing my radio. Isn't Bose just standing in the shoes of Ray's service shop and they're not really selling or using that good in commerce? That's really the crux of the argument you're making, isn't it? Yes, in the sense that and that's what Carl Storrs speaks to which is this is a repair service and it doesn't matter who is the one that's doing the repair. Are you relying on Carl Storrs? It further just confirms Well, the only reason I ask is the board went to great pains to insist that it was not relying on Carl Storrs. So which, are we or are we not relying on Carl Storrs to ground this decision? Carl Storrs is not necessary to the board's statutory interpretation, but it You don't need it if you want to use it anyway? But it further confirms that the plain meaning interpretation of the board's was correct. That's what was happening. Let me go back to the importance of affidavits here because I don't want that to be lost on the court. Congress is confused about the importance. We know the patent office can't go out and verify everything said in every application. They have to take it at face value except in the rarest case where something calls their attention to that. But that doesn't answer the question. The question involves balancing different competing interests. Of course, you want to have maximum accuracy in the submissions to the patent office. On the other hand, you don't want to cancel registered marks unless something pretty bad has happened. That's why Congress chose fraud rather than negligence or some lesser showing. It doesn't seem to me to help to say, oh, this is very important that we have accurate submissions. Of course. It is important. That's what Duffiemont and Torres were speaking to. That's when Duffiemont said we can't permit people... We can execute people who lie to the patent office and say, well, we have to do that because it's very important to have accurate submissions. Well, yeah, it's important to have accurate submissions but it's disproportionate to execute somebody who submitted an inaccurate affidavit. We have to have some kind of balance. Some proportionality. There is proportionality here because first of all, there are opportunities for a trademark owner to come and correct their registration. Yeah, but Sullivan didn't think he made a mistake. Sullivan thought he was right, so of course he didn't correct it. But in our view, based on the way we read the statute, what happened there was a hard-headed, unreasonable interpretation. What happened here was Bose first tried to knock out Hexawave's application claiming fraud, and in fact, Bose cited the Medinol Torres standard, and then the tables got turned on them when it was discovered that... What are you saying? They're stopped from making the argument? Well, I'm trying to give you context for where this interpretation came from. What's the import of the context? Are they stopped from arguing that the standard should be different than what the office says it should be? Well, not that on itself, but as you pointed out, they haven't challenged that standard in their blue brief. Well, you didn't allege waiver in your red brief, so maybe you waived the waiver argument. But in our red brief at page 38, we point out that Bose did not contest or challenge the Torres legal standard. They were challenging the application of it, perhaps, but they were not challenging the actual test. So if we're struggling with the standard, are we in reckless disregard? Well, as I understand it, you're bound by what this court said in Torres and Duffey model. Said or held? Held, because in Torres... Glad you corrected me, though. We've said all sorts of things in thousands of prior opinions that are not finding precedent because they're dicta. Allow me to be more precise. It was held because in that particular case, Torres came back and said, oh, it was a misunderstanding. I didn't realize that the mark that I am now using in commerce is so different from the mark that I had registered that I had to notify the PTO of the difference. And so he was claiming that there was some kind of mistake or misunderstanding in the law and understanding what kind of notification you should give to the PTO. And what this court said three times is Torres knew or should have known that that was a false representation to PTO. If we interpret Torres when it said knew or should have known as meaning knew or acted in reckless disregard, would we be faithful to the Torres decision in interpreting it that way? I think you could interpret it that way, but because in... as this court's in Duffiemont, when you are obligated by Congress to file these affidavits to tell the truth about your identification of goods and services, you have a high duty on you and we can't because it goes right to the very heart of the scope of your intellectual property rights. Is the answer we would be faithful to Torres if we interpreted it that way? I think it would be consistent with Torres. And the point is that as well as Mother Tucker's and Bart Schwartz, is that these affidavits need to be taken seriously. And if people are not taking them seriously and they are not really showing an honest mistake or some good faith mistake, then they are in jeopardy of having their registration deemed unenforceable. But, at the same time, I want to make clear that that is not nearly the same thing as rendering a patent unenforceable because they are not nearly the same impact. Yes, you are going to lose certain procedural rights when you lose a registration. But, first of all, you can reapply. And, secondly, you still retain your common law rights to that trademark. Those don't go away. You will always have that first date of use. You can still go into federal court under Section 43 of the Lanham Act and sue people for trademark infringement. Counsel, you probably read Justice Alito's Third Circuit opinion in Marshak v. Treadwell on the way he interpreted our Torres decision. Do you want to elaborate or give us any thoughts on what you think about his interpretation? I'm sorry, Your Honor. You'll have to tell me what. Oh, I'm sorry. In Marshak v. Treadwell, now Justice Alito, sitting on the Third Circuit, interpreted our Torres opinion in particular on exactly this point. And he said, oh, no, no. They weren't meaning to put in a should-have-known standard. What they clearly did, and here I'll quote for you, was, whether the applicant's own company was using the mark in Commerce dash proof that the applicant should have known was ample to prove actual knowledge. The way he interpreted our Torres decision, and he's very clear about this, was not that the standard is new or should have known. But the should-have-known part is relevant to whether actual knowledge was in fact proven. Let me give you an example. Suppose in a company I get the janitor to sign the affidavit. Well, it turns out he didn't know what the heck we were doing with regard to anything that doesn't absolve the company in its entirety from the actual knowledge standard that is imposed upon the company. And that's where he went and how he interpreted our, that's not exactly his effect pattern, but that's how he went when he interpreted our Torres opinion. It's kind of hard for us to say that Justice Alito got it wrong. Well, maybe Justice Alito didn't have the benefit of reading Torres in context with cases like Duffiemont. And maybe he didn't appreciate that the new or should-have-known language in Torres was repeated three times throughout the opinion. And also said when the last time it used new or should-have-known, equated it with knowingly misrepresenting material fact to the PTO seeking a trademark registration. That is what happened in Torres. And basically, in response to the trademark owner's contention that it had a misunderstanding, ultimately the court said, look, you either knew you were doing something wrong or you absolutely it's absolutely unreasonable for you to say that you didn't know you were doing something wrong. So your contention to us that it was a misunderstanding, I didn't quite appreciate the significance of what is a material alteration of the mark is not going to be accepted in this kind of circumstance because of the importance that these affidavits have to the trademark register and the trademark system. So that is what is going on in cases like Torres and then I'll have to repeat. In Duffiemont this court's predecessor could not be clearer about how crucial these affidavits are. When Congress says you have to do this in an affidavit you have to take that content of your affidavit seriously. You have to come up and tell us the truth. To tell the truth you've got to know the truth. To know the truth you have to have some kind of good faith investigation as to what you are really doing in commerce. What are you really selling, making, transporting these goods in commerce for the purposes of some kind of trade in the goods? Yes or no? It's not the time to come up with novel legal theories about what may or may not fit within the statute. And if that is in fact what happened here it's unreasonable to have this kind of novel legal theory for multiple reasons. Number one, it's not in commerce. This is a repair service. You're repeating your earlier arguments. Let's hear some rebuttal from Mr. Hyken. Okay. Thank you. Thank you, Your Honor. I would just like to hit one point that was raised about how it's not so important to have a registration for a trademark owner. I think if you look at what has been happening in business business people place great value on having a trademark. And especially is it valuable when you've used the mark for so many years as you have here, and this is a mark that was held to be a famous mark by this court and to penalize those for this slight misconception which we submit is not a misconception of the statute is hardly a proportionate way of dealing with the particular situation. It is a drastic situation. And the importance of having marks on the register is not only from the standpoint of the trademark owner, but it's also important from the standpoint of the public that is going to look at the register and stay away from infringing registered marks. So that is extremely important. Now with respect to the issue of fraud on page A-5 of the record the board says it thus appears that the very nature of the charge of fraud requires that it be proven to the hilt with clear and convincing evidence. There is no room for speculation, inference, or surmise, and obviously any doubt must be resolved against the charging party. Fraud will not lie if it is proven that the statement, though false, was made with a reasonable and honest belief that it was true. Here in this situation not only was the statement made with a reasonable and honest belief that it was true, but we submit that it was true, and we submit there is no evidence that contradicts it. Thank you. All right. We thank all counsel. We'll take the appeal under advisement.